UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VOLVO TRUCKS NORTH AMERICAN, INC.                CIVIL ACTION

VERSUS                                            NO. 02-3398

CRESCENT FORD TRUCK SALES, INC.                   SECTION "A"(4)

### ORDER AND REASONS

Before the Court is a **MOTION TO STRIKE "EXPERT REPORT" OF CHARLES THERIOT AND TO EXCLUDE HIS TESTIMONY AT TRIAL, OR IN THE ALTERNATIVE, TO LIMIT HIS TESTIMONY TO HIS OPINION AS TO LUCIANO'S LOST PROFITS AS EXPRESSED IN HIS PRELIMINARY ANALYSIS (Rec. Doc. 209 )** filed by defendant Crescent Ford Truck Sales, Inc. ("Crescent"). Plaintiff Volvo Trucks North America, Inc. ("Volvo") opposes the motion. The motion, reset for hearing on April 19, 2006, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

### I.   BACKGROUND

This lawsuit had its beginnings in a bankruptcy proceeding

filed by Luciano Refrigerated Transport, Inc., ("Luciano") whose president is Mr. Louis Saia, III ("Saia").  Luciano is (or was) a customer of both plaintiff Volvo and defendant Crescent. Crescent is an authorized agent, representative and franchise dealer of Volvo Trucks pursuant to a written Dealer Sales and Service Agreement.

On November 20, 1996, Volvo sold to Crescent a fleet of 50 Volvo trucks which were built by Volvo Trucks North America, Inc., for Luciano based on specifications approved by Luciano. Crescent then sold the trucks to Volvo Commercial Finance, L.L.C., which in turn leased the trucks to Luciano.  The arrangement was required because Luciano was in financial difficulty and could not get financing to purchase the trucks outright.

The negotiations between Volvo and Luciano were handled orally by Saia for Luciano and Russ Tedder, Vice President of Volvo's Southern Region, for Volvo.  Crescent was not a party to those negotiations but was an observer.  A purchase order was prepared by Crescent at the direction of Tedder, and signed by Saia for Luciano before the trucks were built.  Luciano alleged that during the negotiations Saia expressed concerns regarding the reliability of the Volvo Tractors.  (Doc. No. 96, Exh. K, Complaint for Damages filed in the Bankruptcy Court, ¶ 7).  Saia

claimed that Crescent and Volvo made various representations to help alleviate those concerns and that Saia relied upon these representations when entering into the Volvo lease.  (Id.).

At the time of the lease, Volvo extended to Luciano three written warranties:  a Basic Truck Warranty Extended for 42 months or 500,000 miles; a Basic Powertrain Warranty, and a VIP C Engine Warranty.  The Basic Truck Warranty and the Basic Powertrain Warranty were activated by a Warranty Registration Certificate which incorporated those two warranties.  That Certificate was purportedly signed by Saia on behalf of Luciano.  Volvo Finance, actual owner of the trucks, assigned the warranties provided by Volvo, the builder of the trucks, to Luciano.  In the bankruptcy proceeding Luciano claimed that Volvo had orally promised a "bumper to bumper" warranty that included everything but batteries.  (Doc. No. 96, Exh. K, Complaint for Damages filed in the Bankruptcy Court, ¶ 8).  Luciano claimed to have paid Volvo $185,000.00 for that warranty but never received a copy in writing.  (Id. ¶¶ 8, 10).  The trucks were delivered in early 1997.

After the trucks were on the road for about a year, disputes arose between Luciano and Volvo regarding coverage under the various warranties.  Luciano claimed to have spent substantial sums of money to repair the Volvo vehicles but that Volvo refused

to honor the bumper to bumper warranty. (Id. ¶ 12). Negotiations between the parties proved to be fruitless. Luciano subsequently filed for bankruptcy protection in 1998, and on November 2, 1999, filed adversary proceeding 99-1224 against Volvo North America and Volvo Commercial Finance, alleging, *inter alia*, fraud on Volvo's part in its failure to honor the oral "bumper to bumper" warranty that Saia claimed to have negotiated directly with Russ Tedder. (Doc. No. 96, Exh. K). In discovery on that matter, Volvo learned that Saia had not actually signed the Warranty Registration Certificate. Rather, Glenn Koch, a salesman with Crescent at that time, actually signed Saia's name to the Warranty Registration Certificate thereby activating the warranties.[1] Volvo claims that it would have been entitled to summary judgment in the adversary proceeding if Saia had personally signed the Certificate because the Certificate clearly states that no oral warranties can alter the limits and terms of the written warranties. At the very least, Volvo argues that its defense to Luciano's adversary proceeding was weakened because if Saia did not actually sign the Certificate, he could not be held

---

[1] Koch attests that it was common practice for Saia to authorize and instruct him to sign Saia's name to Volvo warranty registrations. (Doc. No. 96, Exh. 6, Koch Affidavit, ¶ 8). Saia testified that he did not recall giving Koch permission to sign for him but that Koch might have told him that he had done so. (Doc. No.96, Exh. E, 3/31/05 Saia Depo. at 24).

to its terms.

Volvo claims that Koch's action in signing the Certificate for Saia was in violation of an express contractual provision in Crescent's 1995 Dealer Agreement with Volvo and was an "egregious" breach of Dealer Agreement, and the cause of substantial damages to Volvo. Volvo filed a third party demand against Crescent in the adversary proceeding asserting that if Volvo were to be found liable to Luciano for any amount then Crescent should reimburse Volvo. (Doc. No. 96, Exh. N, Volvo's Third Party Demand, ¶ 4). Volvo asserted that Luciano was seeking consequential damages based on an oral promise and that such a claim would have been precluded had Saia personally signed the Certificate. Volvo settled with Luciano in February 2002, (Rec. Doc. 96, Exh. O), and the bankruptcy court then dismissed Volvo's third party demand against Crescent for lack of subject matter jurisdiction. Volvo then filed this action against Crescent seeking to recover the full amount of the settlement with Luciano as well as attorney's fees and costs. Volvo claims that Crescent breached the Dealer Agreement when Koch signed Saia's name to the Warranty Certificate and that this breach led to the Luciano lawsuit which Volvo ultimately paid $475,000.00 to settle.

**II.   DISCUSSION**

Crescent moves to strike the expert report of Charles Theriot and to exclude his testimony from the trial on the merits of this matter.  Crescent argues *inter alia* that Theriot's "report" is actually a "preliminary analysis" that does not comply with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) regarding disclosure of expert testimony.[2]  Alternatively, Crescent argues that Theriot should not be allowed to testify beyond the confines of the opinions contained in his "preliminary analysis" which pertains to loss of profits

---

[2] Federal Rule of Civil Procedure 26(a)(2)(B) provides:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B).

sustained by Luciano as a result of the mechanical difficulties experienced by the Volvo trucks from January 1, 1997, through June 30, 2001.  Crescent argues that Theriot should not be allowed to testify as to *all* damages allegedly sustained by Luciano, or as to the reasonableness of Luciano's settlement with Volvo.

In opposition, Volvo argues that Crescent's attempt to challenge Theriot's report on procedural grounds is late in the game considering that Crescent has had the report for years now and considering that Theriot has been listed as an expert in this case for some time.  Volvo argues that Crescent only recently deposed Theriot and that the deposition was very favorable to Volvo.  Volvo argues that the deposition itself satisfies many of the aspects of Rule 26 that are lacking in Theriot's report. Volvo argues that it would be a blatant abuse of discretion to exclude  Theriot at this stage on procedural grounds.

Further, Volvo argues that even though Theriot's report was a "preliminary analysis" the substance of his opinions has changed very little since the time he originally prepared the report.  Volvo argues that Theriot's opinions should "include the ABCD Lists of Luciano's claimed out of pocket costs (a) because Crescent has had them since the bankruptcy case and (b) because he prepared them, and (c) because they were clearly used in the

Annexes to the report Crescent has had since 2001."

District courts have wide latitude in determining the admissibility of expert testimony.  <u>Watkins v. Telsmith, Inc.</u>, 121 F.3d 984, 988 (5th Cir. 1997) (quoting <u>Eiland v. Westinghouse Electric</u>, 58 F.3d 176, 180 (5th Cir. 1995)).  "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . ."  Fed. R. Evid. 702.  However, the cornerstone for the admissibility of all evidence is "relevancy."  <u>See</u> Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.").  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

On February 4, 2005, Volvo filed its preliminary witness list in accordance with an order from the Court.  That list includes Charles Theriot who is identified as "Luciano's Accounting Expert."  (Rec. Doc. 76).  In response to relevancy concerns raised at the February 14, 2005, status conference, the Court ordered the parties to file their list of anticipated

experts along with a brief summary of the expert's proposed testimony and text describing the specific issue to which the testimony is directed (relevance). (Rec. Doc. 79). Volvo filed its list on March 1, 2005. Theriot was listed as a "Fact Expert" but no summary of his testimony was included. (Rec. Doc. 81). Crescent moved to strike the list due to Volvo's failure to comply with the Court's express order but the Court denied Crescent's motion and permitted Volvo to file an amended anticipated expert list. (Rec. Doc. 87). Volvo's amended anticipated expert list once against included Charles Theriot - Accounting Expert. For its summary of Theriot's testimony Volvo stated:  "He has rendered a written report which summarizes his opinions as to Luciano's damages at the time of the settlement. A copy is annexed. It has been available to Crescent for three years now." (Rec. Doc. 89).

Theriot's "report" is a two page letter[3] dated September 19, 2001. (Crescent Exh. B). The letter is addressed to the attorneys who represented Luciano against Volvo in the bankruptcy adversary proceeding. At his deposition in January 2006, Theriot explained that in September 2001 his firm had been working on

---

[3] The Court is being generous in referring to the report as a *two* page letter. Excluding captions and the list of addressees the letter is really only a single page.

behalf of Luciano to develop the damage claim against Volvo. (Theriot depo. at 18). In September 2001, Theriot had not completed his work but Luciano's attorneys were working with Volvo's attorneys to settle the case so he was asked to provide the information he had compiled to date. (Id. at 18-19). Theriot called the "report," which was in fact a letter, a "preliminary analysis" because he knew that his work was not complete when he prepared it. (Id.). Moreover, as of the date that Theriot authored the letter, he had relied solely on data compiled by two individuals, Paul Centanni and Kirby Lane, and had not had the opportunity to independently verify the information provided. (Id. at 23). Theriot asserts, however, that between September and December 2001 he did verify the data and that he is comfortable with the data upon which he relied. (Id. at 24). No final version of the September 2001 letter was ever prepared but Theriot's opinions have not substantially changed since the time he wrote the September 2001 preliminary analysis. (Id. at 23, 26, & 40, & 67). The letter does state Theriot's opinion as to Luciano's damages at the time of the settlement *but only as to the loss of profits* sustained by Luciano as a result of the mechanical difficulties experienced with the Volvo trucks during the period from January 1, 1997, through June 30, 2001. (Id.).

Crescent is correct that Theriot's report does not comply with the requirements of Rule 26 regarding reports of experts. Theriot is not a fact witness nor a "fact expert," assuming such a thing exists. Theriot is unarguably being called as an expert witness in this case and Volvo is therefore required to comply with the Rule 26(a)(2)(B) formalities. Volvo's attempt to highlight Crescent's decision to wait until the final deadline to challenge Theriot on procedural grounds only highlights the fact that Volvo, as proponent of this witness, made no efforts of its own to cure the obvious Rule 26 deficiencies, this notwithstanding that Volvo likewise has had Theriot's opinion letter for years now.[4]

Nevertheless, the Court will not strike Theriot for failure to comply with Rule 26 formalities. Crescent deposed Theriot on January 25, 2006, and the record is now complete as to how Theriot reached the conclusion contained in the September 19,

---

[4] At the December 7, 2005, status conference the Court gave the parties a final hearing date of April 5, 2006, for motions challenging the admissibility of expert testimony. (Rec. Doc. 185). Crescent missed the filing date for that hearing date due to its misreading the pertinent local rule but requested expedited hearing so that its motion could be heard on the merits notwithstanding counsel's error. (Rec. Doc. 207). In a barrage of vituperative comments, Volvo opposed having the motion to strike heard at all. Over Volvo's objection the Court set the motion for hearing but placed it on the April 19th docket in order to accommodate Volvo's request that its opposition not fall due during the course of certain scheduled oppositions.

2001, letter, the data upon which he relied, his qualifications, list of other cases, list of publications, and his compensation arrangement with Volvo.

Crescent's better argument comes under the rubric of *reliability* of this witness's testimony, although Crescent does not characterize it as such.  Theriot's report was admittedly based on incomplete work when he prepared it, and at the time he relied upon data that he had yet to verify.  Nevertheless, the Court is of the opinion that Theriot need not be stricken as a witness due to these concerns.  The issues Crescent raises are fodder for cross examination at the trial of the merits. Crescent will be given wide latitude in crossing Theriot as to the conclusion presented in his 2001 report.  The jury can decide how much weight to give to Theriot's testimony.

The scope of Theriot's testimony, however, will be limited to the sole opinion that he offered in his report as produced by Volvo in this litigation, i.e., the loss of profits sustained by Luciano as a result of the mechanical difficulties experienced by the Volvo trucks from January 1, 1997, through June 30, 2001, assuming of course that Volvo can establish the *relevance* of such testimony to *this* litigation.  The issue in this litigation is damage Volvo incurred due to Crescent's failure to obtain Luciano/Saia's signature on the warranty registration

certificate, the significance of that signature being Volvo's defense to any oral warranty claims. Two issues trouble the Court with Theriot's proposed testimony. First, Theriot's lost profits calculations seem to be his attempt to capture the negative financial impact associated with having trucks that suffered frequent mechanical breakdowns. Such a calculation measures something very different than the amount of money that Luciano claimed to be out by having to pay for repairs that Saia contended were covered by an oral warranty. Second, Theriot admitted in his deposition that his 2001 calculations did not differentiate between warranty repairs that were covered by one of the written warranties and those that Saia claimed were covered by the oral warranty. Without such a differentiation the Court has genuine concerns as to how Theriot's conclusion regarding lost profits can be relevant to Volvo's claim in this case. Volvo should take note that although Theriot is not being stricken as a witness at this time, the Court will not sit by while any party presents evidence that is sure to mislead or confuse the jury. Moreover, given that this trial is scheduled to last ten days, the Court will not hesitate to intervene when either party begins to subject the jury to evidence that is clearly irrelevant to this case.

    Finally, Theriot will not be allowed to testify as to the

reasonableness of the settlement because such an opinion was not part of his report. Furthermore, Theriot confirmed in his deposition that he was not privy to any of the settlement discussions or strategies in 2001 so he cannot be a "fact" witness with respect to anything related to the settlement. As for the ABCD lists that Volvo wants to admit, they were not annexed to Theriot's report, or mentioned in the report for that matter, and their genesis and relevance is unclear to the Court at this time, even after having read Theriot's deposition (twice). The Court expresses no opinion as to the admissibility of the lists at this time.

Accordingly;

**IT IS ORDERED** that the **MOTION TO STRIKE "EXPERT REPORT" OF CHARLES THERIOT AND TO EXCLUDE HIS TESTIMONY AT TRIAL, OR IN THE ALTERNATIVE, TO LIMIT HIS TESTIMONY TO HIS OPINION AS TO LUCIANO'S LOST PROFITS AS EXPRESSED IN HIS PRELIMINARY ANALYSIS (Rec. Doc. 209 )** filed by defendant Crescent Ford Truck Sales, Inc. should be and is hereby **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** insofar as Theriot's testimony will be limited solely to the loss of profits sustained by Luciano as a result of the mechanical difficulties experienced by the Volvo trucks from January 1, 1997, through June 30, 2001. The motion

is **DENIED** in all other respects.

New Orleans, Louisiana, this 18th day of April, 2006.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE